877 So.2d 1157 (2004)
J. Michael HART, Plaintiff-Appellant
v.
THEUS, GRISHAM, DAVIS & LEIGH, L.L.P., et al., Defendant-Appellee.
No. 38,503-CA.
Court of Appeal of Louisiana, Second Circuit.
July 2, 2004.
Fred Royce McGaha, Monroe, for Appellant.
Davenport, Files & Kelly, L.L.P., by Thomas W. Davenport, Jr., Monroe, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
DREW, J.
Monroe attorney J. Michael Hart appealed the denial of his request for a preliminary injunction seeking to stay arbitration of his dispute with his former law firm. Hart also sought a declaratory judgment holding that he was under no obligation to enter into mandatory arbitration, had no partnership agreement with the firm, and was not bound by the 1987 partnership agreement between himself and his former firm. The primary issue is whether the 1987 written partnership agreement was terminated and a new entity was created when the partnership registered for limited liability partnership (LLP) status. For the following reasons, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
The Monroe law firm of Theus, Grisham, Davis and Leigh (TGDL) was originally formed in 1906 and has maintained a reputation for excellence through the years. Except for a brief period in the 1980s, the *1158 firm was primarily known as TGDL and apparently operated under an oral partnership agreement. Hart, a highly talented and productive lawyer, joined the firm in 1973 and became a partner in 1977. On December 1, 1987, eight of the nine TGDL partners (including Hart) signed a partnership agreement (except for Brian Crawford, who left the firm at the end of 1987). The 1987 partnership agreement included a mandatory arbitration clause. Section 8.1 of the 1987 partnership agreement states:

Arbitration as Sole Remedy. Any controversy between the Partners and/or their spouses and the Firm or involving the Firm or any claim arising out of or relating to this Agreement or the breach thereof shall be settled solely by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof.
The partnership agreement also contained sections providing for capital and drawing accounts along with a method for determining and distributing income based upon a point system which provided for performance bonuses. This point system has been adjusted periodically by agreement of the partners since 1987. The contract also set out a detailed system for calculating a partner's financial interest in the firm in the event of withdrawal, retirement, expulsion, disability, or death of a partner. Over the years, adjustments for bonuses were set and paid to high-revenue producing partners.
The 1987 partnership agreement was amended seven times after it was initially executed; the arbitration provision was never amended. The first amendment in February 1988 set points for distribution of income and recognized the withdrawal of Brian Crawford and the addition of Thomas Zentner to the partnership. The second amendment in January 1990 added James Edwards as a partner and set points for income distribution among the partners. The third amendment in December 1990 added current Judge Sharon Ingram Marchman as a partner and set the Partner Points for computing income. The fourth amendment added Robert Bozeman as a partner and also adjusted Partner Points for distributing income. The fifth amendment in December 1993 (after filing for LLP designation) added current Judge Wendell Manning and F. Williams Sartor, Jr., as partners and adjusted the Partner Points. Hart signed all those amendments. In each of the amendments, the new partner and spouse, where applicable, agreed to be bound by the partnership agreement as amended.
The first five amendments to the partnership agreement did not contain the ratification language found in the sixth amendment in January 1999, which stated that the new partner "expressly agrees to and joins in the said Articles of Partnership as originally adopted, as amended herein, and the other parties ratify and confirm said articles and amendments in all respects." In addition to adding a partner, this sixth amendment also set Partner Points. Hart stated to the firm that he would not be bound by the partnership agreement and refused to sign the sixth amendment to the TGDL partnership agreement in which George Snelling was made a partner and by which all the partners ratified and confirmed the 1987 partnership agreement.
Retired after 41 years of practice with TGDL and of-counsel with the firm at trial, Robert Curry testified that he took an active part in the drafting of the 1987 partnership agreement and the amendments until his retirement. He thought the first five amendments contained ratification language similar to that in the sixth *1159 amendment and should have. However, his opinion was that signing the first five amendments constituted a ratification of the 1987 partnership document being amended by all signatories.
About 1993, the firm registered as a Limited Liability Partnership and thereafter used the name TGDL, LLP, as required by La. R.S. 9:3433.[1] An application of a Registered Limited Liability Partnership was filed with the Secretary of State.
The existing TGDL partnership did not execute a new partnership agreement and continued for years to operate under the 1987 partnership agreement after filing its 1993 registration for protection under the limited liability provisions of La. R.S. 9:3431 et seq. Although points were adjusted, income was distributed under the guidelines of the 1987 partnership agreement. The firm's tax identification number was unchanged before and after the 1993 LLP registration. The executive committee conducted the firm's day-to-day operations before and after the 1993 LLP registration. Curry described how bonuses for high income producing partners were calculated. Withdrawing partners' "buy-outs" were calculated using the guidelines in the 1987 partnership agreement. Hart was a participating partner in the firm until he withdrew in November 2001.
While a partner at TGDL, Hart represented Gulf States Land and Development, Inc., Stanley Palowsky, and his business partners, in protracted, difficult, and high-risk litigation involving multiple lawsuits on behalf of the companies and individuals. Some firm members did not participate in these cases. Other members of the firm directly assisted Hart in the primary litigation. In any event, Hart was the lead attorney in these matters. The firm's relationship with Palowsky, his business partners, and his business entities was complex. In 1996, the TGDL partners signed an agreement for the firm to act as guarantor of a $950,000 loan by Gulf States to develop a subdivision. Testimony revealed that some TGDL partners had concerns about potential liability arising out of the contentious litigations involving Gulf States, Palowsky, and his business partners.
In a trial commencing September 11, 2001, a multi-million dollar judgment was granted in Palowsky's favor in one of the Palowsky matters. Although the defendant appealed the large judgment, the parties subsequently entered into a confidential settlement, the terms of which have not been revealed. In November 2001, Hart resigned from the firm.
The present dispute is over the rights and obligations resulting from Hart's withdrawal from the partnership. Demands for accountings and supporting documents were exchanged. On December 24, 2002, the firm filed its "Demand for Arbitration" under the Commercial Arbitration Rules of the American Arbitration Association. On March 19, 2003, Hart filed this proceeding, a "Petition for Declaratory Judgment Relief and Injunctive Relief." On March 28, 2003, the firm filed a request for a stay of the proceedings. On March 31, 2003, the trial court issued an "Amended Order" granting a TRO which enjoined the arbitration proceedings.
A hearing was held in April and May, 2003, on Hart's preliminary injunction request and on the firm's stay application. The trial court issued reasons for judgment on July 11, 2003. Because the parties could not agree on the form of the *1160 judgment, the trial court filed its own judgment on August 19, 2003.
The final judgment ruled that:
1. The LLP registration of TGDL in 1993 did not terminate the 1987 partnership.
2. § 8 on mandatory arbitration is valid and Hart is bound by its terms.
3. Hart failed to participate in the arbitration.
4. Hart's request for injunctive relief is denied.
5. The firm's stay request is granted and further proceedings are stayed.
6. The arbitration proceedings are authorized to proceed.
7. Hart's TRO is dissolved and vacated.
Hart filed this appeal on August 28, 2003.

TRIAL COURT'S REASONS FOR JUDGMENT
The trial court noted that two basic issues were present. First, the existence of this litigation was proof of Hart's refusal to participate in the arbitration. The second and main issue was whether Hart is bound by the 1987 partnership agreement and by § 8 (mandatory arbitration). The trial court properly concluded that Hart was required to arbitrate this dispute with his former law firm. The stated reasons were:
 Testimony revealed that Hart was a party to the 1987 partnership agreement of TGDL which contained the mandatory arbitration provision.
 Hart signed five of the seven amendments to the 1987 partnership agreement, one of which was signed after the firm registered as an LLP in 1993. None of the amendments terminated the arbitration provision.
 Effective November 30, 2001, Hart withdrew from the firm.
 The registration of the firm as TGDL, LLP, did not terminate the 1987 partnership agreement or the 1987 arbitration provision.
 There were no bases present for declining to enforce the arbitration clause, i.e., fraud, termination of contract, duress, mistake, prescription, consent, or contra bonos mores.
 Hart availed himself of the many benefits of partnership up until the "very last minute."
 Hart helped the firm obtain LLP status, which did not terminate or dissolve the 1987 partnership.
The trial court dissolved the TRO and ordered that arbitration proceed.

DISCUSSION
This lengthy record reveals unfortunate circumstances in which friendships and long-standing business relationships among fine, able, professional attorneys have been replaced with feelings of disappointment, sadness, mistrust, betrayal and antipathy. Notwithstanding the detailed testimony, the issue before this court is a legal one. This court makes no findings as to who did what to whom and who are "good guys" and "bad guys" in this complicated mess. Now is not the time to decide "who shot John?" The best possible outcome would be to avoid having that answered by a non-participant and for the folks at TGDL and Hart to sit down together and hammer out a compromise with which all can live. Since that seems unlikely at this juncture, the parties must arbitrate their differences as mandated by the 1987 partnership agreement.
La. C.C. art. 2801 provides, in pertinent part:
A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons *1161 to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
A change in the number or identity of partners does not terminate a partnership unless there is only one remaining partner. La. C.C. art. 2829. Concerning this dispute, the relevant cause for termination of a partnership is found in La. C.C. art. 2826, which states that a partnership terminates in accordance with provisions of the contract of partnership.
While the primary liability is on the partnership itself, a partner generally is liable for his/her virile share of partnership liability. La. C.C. art. 2817. The advantage of a partnership registering as a limited liability partnership is contained in La. R.S. 9:3431, which states in part:
A. Notwithstanding any other provisions of law to the contrary contained in Civil Code Article 2817, a partner in a registered limited liability partnership shall not be individually liable for the liabilities and obligations of the partnership arising from errors, omissions, negligence, incompetence, malfeasance, or willful or intentional misconduct committed in the course of the partnership business by another partner or a representative of the partnership.
...
C. Subsection A of this Section shall not affect the liability of a partner for his virile share of liabilities and obligations of the partnership arising from any cause other than those specified in said Subsection A.
D. Subsection A of this Section shall not affect the liability of partnership assets for partnership liabilities and obligations.
E. A partner, which by reason of Subsection A of this Section is not subject to liability, is not a proper party to a proceeding by or against a registered limited liability partnership, the object of which is to enforce the liabilities and obligations described in Subsection A of this Section.
La. R.S. 9:3432 sets out the procedure for registering as a limited liability partnership:
A. To become a registered limited liability partnership, a partnership shall file with the secretary of state an application stating the name of the partnership, the address of its principal office, the number of partners, and a brief statement of the business in which the partnership engages.

B. The application shall be executed by a majority in interest of the partners or by one or more partners authorized by a majority in interest of the partners.
C. The application shall be accompanied by a fee of one hundred dollars.
D. The secretary of state shall register or renew any partnership that submits a completed application with the required fee.
E. Registration is effective for one year after the date the registration is filed, unless voluntarily withdrawn by filing with the secretary of state a written withdrawal notice executed by a majority in interest of the partners or by one or more partners authorized by a majority in interest of the partners.
F. The secretary of state may provide forms for application for or renewal of registration.
(Emphasis added.)
At this time, there are no reported Louisiana cases interpreting the statutes governing registration as a limited liability partnership. However, of particular assistance in resolving this issue is the language of La. R.S. 9:3435, which states:

*1162 A registered limited liability partnership is a partnership as defined in Article 2801 of the Civil Code, and the provisions of Title XI of Book III of the Civil Code apply to registered limited liability partnerships to the extent that they are consistent with the provisions of this Chapter. Upon lapse or termination of registration, the affected registered limited liability partnership shall continue as a partnership under Title XI of Book III of the Civil Code, but without application of this Chapter.

(Emphasis added.)
La. C.C. art. 2801 et seq. are the general laws of partnership. A limited liability partnership is a regular partnership, the partners of which have elected to take advantage of the limited liability partnership protections by registration pursuant to La. R.S. 9:3431 et seq. If a partnership fails to renew the registration, only the limited liability protection ends while the partnership itself continues. Except for the statutes governing limited liability protection, partnerships are governed by the general laws of partnership.
Susan Kalinka, Limited Liability Companies and Partnerships, Chapter 2, § 2.1, Introduction, 9 Louisiana Civil Law Treatise (2001), explains:
The effect of the [La. R.S. 9:3431 et seq., Registered Limited Liability Partnerships] is to modify the liability rules of the Louisiana Partnership Law if a partnership registers as an LLP and certain procedures are followed. In all other respects, an LLP is a partnership governed by the Louisiana Partnership Law.
The treatise goes on to note that any type of partnership may qualify as an LLP. However, the LLP legislation was designed primarily to protect professionals such as doctors and lawyers from the malpractice of their partners.
In Glenn G. Morris and Wendell H. Holmes, Business Organizations, § 45.02, Formation, 8 Louisiana Civil Law Treatise (1999), the authors state:
... [T]he formation of an LLP as a separate juridical person does not depend upon compliance with the LLP statute. An LLP is simply a form of partnership in which some of the personal liability otherwise imposed by art. 2817 of the Civil Code is eliminated. Hence, compliance with the LLP statute is not the means by which the LLP-eligible partnership is formed. Rather, compliance is the means by which the protections offered by the statute may be obtained.
On appeal, Hart correctly pointed out that after obtaining the LLP registration in 1993, the partnership did not enact a new partnership agreement. Hart also urges that in 1993 the firm became a new legal entity which never adopted the 1987 partnership agreement. However, Hart and the other members of the firm continued to operate under the partnership agreement previously entered. As previously noted, Hart signed five of the seven amendments to the 1987 partnership agreement including the fifth one which was entered after the firm obtained the LLP designation through registration.
Citing La. C.C. art. 2807, Hart argued in brief that the partners agreed to terminate the existing 1987 partnership in which the partners were liable for their virile shares and entered in 1993 a new contract to operate as an LLP. Contrary to that argument, art. 2807 states:
Unless otherwise agreed, unanimity is required to amend the partnership agreement, to admit new partners, to terminate the partnership, or to permit a partner to withdraw without just cause if the partnership has been constituted for a term.

*1163 Decisions affecting the management or operation of a partnership must be made by a majority of the partners, but the parties may stipulate otherwise.
Nothing in the article indicates that a partnership is terminated by virtue of amending a partnership agreement or by admitting a new partner. Hart's argument that registering for LLP status resulted in the partnership becoming an entirely new entity is not supported by the language of La. C.C. art. 2807.
Hart correctly argued that use of the LLP designation required by La. R.S. 9:3433 puts third parties on notice that the partners are taking advantage of the limited liability provision. However, Hart's conclusion that the LLP designation resulted in a new partnership entity is unsupported.
Since Hart refused to sign the sixth amendment containing the ratification language, his position is that he is not bound by the 1987 partnership agreement and has not made an agreement to arbitrate with TGDL, LLP. His argument is that the firm's action in registering for LLP status changed the nature of the partnership and created a new entity. The change resulted in liability no longer being spread among all the partners for their virile shares, but was shifted to him, the partner involved in high-risk litigation involving Gulf States and Palowsky. In his view, the firm wanted it both ways: avoiding personal liability but sharing fully in any fees from his risky litigation. Since Hart was willing to take the risk, he apparently does not want to be obligated to arbitrate about sharing any potential benefits and/or expenses with his former partners.
This court agrees with the trial court's contrary conclusion. We conclude a new entity was not created by the registration for LLP status. In this dispute, an existing partnership took advantage of the law enacted in 1992 providing for limited liability in a partnership. While it is elementary that an entirely new partnership entity could be created simultaneously with registration for limited liability partnership status, that did not occur in this case.
Although references to testimony and contents of documents provide context for a discussion of this dispute, this court's finding is based upon the wording of the statutes and the scholarly comments in the cited treatises. To acquire LLP protection, "a partnership shall" file an application with the secretary of state. La. R.S. 9:3432(A). If the registration which must be renewed annually lapses, the partnership continues without LLP status. La. R.S. 9:3435. Hart was a party to the 1987 partnership agreement with its mandatory arbitration provision and its registration for LLP status. That registration did not create a new entity but simply gave limited liability benefits to the existing 1987 partnership under which Hart and the other TGDL partners continued to operate.

CONCLUSION
The 1993 registration for LLP status under La. R.S. 9:3431 et seq. did not create a new partnership entity but provided limited liability status to the existing TGDL partnership. The 1987 partnership directed that disputes of this nature be resolved by binding arbitration, and Hart is bound to do so.
The trial court's judgment denying J. Michael Hart's request for injunctive and declaratory relief, dissolving and vacating the TRO prohibiting arbitration, staying further proceedings in the district court, and authorizing arbitration to proceed is affirmed at Hart's costs.
AFFIRMED.
NOTES
[1] A registered limited liability partnership's name shall contain the words "registered limited liability partnership" or the abbreviation "L.L.P." as the last words or letters of its name.